# EXHIBIT G



Graham R. Pulvere
Shareholder
gpulvere@lgwmlaw.com

March 5, 2019

*Sent via e-mail only to:* blacksherlaw@gmail.com
Wesley H. Blacksher, Esq.
3763 Professional Parkway
Mobile, Alabama 36609

**RE: Gregory Luce – Appraisal Demand**
**DOL: May 13, 2018**
**Event Location: 256 West St. Mobile, Alabama 36604**
**Claim No.: BUL11636**
**Policy No.: BUH016798**
**Our File No.: 572-1**

Dear Wesley:

We represent Certain Underwriters at Lloyd's, London (Underwriters). This is to respond to your January 15, 2019 letter demanding an appraisal under the captioned homeowners' policy, and specifically to define the scope of any appraisal to ensure consistency with the Policy and Alabama law.

Underwriters are prepared to participate in the appraisal process in good faith. To the extent Mr. Luce maintains his demand for an appraisal, Underwriters designate their appraiser as Larry Masters, who can be reached via telephone at (205) 365-5277 and via email at lmasters@getitright101.com. For the reasons discussed below, Underwriters respectfully request that you confirm Mr. Luce's agreement to the scope of any appraisal before we proceed with the appraisal process.

**I.     The Policy**

Underwriters issued a homeowners' insurance policy bearing Certificate Number BUHO16798 to your client, Mr. Luce, for the period August 28, 2017 to August 28, 2018 (the Policy). The Policy has a Dwelling limit of $220,000, an Other Structures limit of $10,000, a Personal Property limit of $50,000, and a Loss of Use limit of $15,000. A $1,000 deductible applies for each loss. The deductible is increased to $6,600 for "each and every loss in respect of wind or hail."

Section I.A.2.c.(6) of the Perils Insured Against part of the Policy provides that Underwriters do not insure for loss caused by any of the following: "(a) Wear and tear, marring, deterioration; (b) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself; (c) Smog, rust or other corrosion;…(f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings…."

Section I.B.3. of the Exclusions part of the Policy provides that Underwriters do not insure for loss to property caused by any of the following: "Faulty, inadequate or defective:…b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; c. Materials used in repair, construction, renovation or remodeling; or d. Maintenance; of part or all of any property whether on or off the 'residence premises'."

Section I.F. of the Conditions part of the Policy, titled "Appraisal," provides:

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

## II. The Wind Damage Claim

On July 12, 2018, Mr. Luce submitted a loss notice to Underwriters indicating that "wind blew off roof tiles" on May 13, 2018. Underwriters' third-party administrator, Raphael & Associates, adjusted the claim. On July 19, 2018, Raphael & Associates' field adjuster conducted a joint inspection of the residence with Mr. Luce and his roofing contractor Robert Veillon. Mr. Veillon tried but was unable to view the roof using a drone. The group climbed onto the roof of an adjacent garage and viewed several mismatched tiles on the left slope. This indicated numerous previous repairs to the roof.

Raphael & Associates then retained Hancock Claims Consultants, which inspected the roof the next day on July 20, 2018. Mr. Luce also was present at the Hancock

inspection. Hancock noted in its report: "There were tiles cracked on both slopes due to the age for the roof and wear. The right slope had one tile missing and it is laying [sic] on the ground, the left slope has a small broken piece that was also missing. They both appeared to have been this way for some time. No hail damage found on the 20-year shingles on the dormer or on the tile. The roof appeared to be in normal condition for its age. All chimney flashing had areas that needed to be sealed."

Raphael & Associates then retained the engineering firm EFI Global, Inc. to determine the origin and cause of the claimed damage. An EFI Global engineer participated in a joint inspection of the home with Mr. Luce and Mr. Veillon on August 15, 2018. The EFI Global Assessment includes "General Observations" that "[t]here was no collateral evidence of hail impacts on the soft metal and peripheral fixtures of the property;" and "[t]here was no widespread evidence of severe winds."

The EFI Global Assessment includes "Interior Observations" that: "There was no widespread evidence of water intrusion or water damage in the interior portions of the residence;" "Stains were visible in the master bedroom ceiling;" "Stains and discoloration were identified in the gypsum wall finishes in the rear living room … consistent with moisture seepage from the attic along the top plate of the common wall between the master bedroom and the rear living room …. The stain did not exhibit long term moisture exposure or visible microbial growth;" "Widespread stains and discoloration of the wood shake decking were observed throughout the attic;" "There was a localized stain and compression of the blown insulation identified over the master bedroom … consistent with a roof leak above the master bedroom;" and "Historic repairs were identified where a roofing compound had been applied to the lower surface of the wood shake decking material. The previous repair was directly above the stain and compression of the blown insulation."

The EFI Global Assessment includes "Roof Observations" that: "The roof was clad with square shaped tiles installed on a diamond pattern;" "There was widespread organic growth;" "Previous repairs and localized tile replacement were identified across the various roof slopes;" "Several loose and slid tiles were visible;" "Approximately 30 tiles were identified as cracked …. The cracks exhibited various evidence of wear and weathering;" "Approximately fifty-percent of the cracked roof tiles exhibit repairs including glue/sealant along the cracks and shingles stabilized with stirrup straps and screws;" "There were no impact marks or evidence of impact fractures identified;" and "One roof tile was identified as missing … along the west rake of the north rear roof slope."

The EFI Global Assessment includes the following "Conclusions and Recommendations:"

1. The shingles covering the [sic] exhibited age-related wear and deterioration. The shingles covering the dormers of the roof were not damaged by hail impact.
2. The shingles covering the dormers of the roof were not damaged by wind.

3. The cracked tiles were the result of historic wear, weathering, and live loading (roof access) conditions. The widespread cracked condition of the tiles was not the result of wind forces or hail impact related to or near the reported date of loss. The fiber cement roof tiles were not damaged by hail impact.
4. **Wind damages to the roof were limited to the one (1) tile missing from the west rake of the north roof slope along the rear of the residence**.
5. Localized repair to the tile roof is feasible as exhibited by the widespread previous and historic repairs to the roof.
6. Both the wood shake and fiber cement roof tiles were found to have exceeded their useful service life.
7. The discoloration of the master bedroom ceiling was the result of a historic, on-going, and previously repaired leak in the wood shake.
8. Any replacement or repairs to the roof of the subject residence may fall in the scope of local historic preservation codes.

Based on the findings of the field adjuster and the two experts, Raphael & Associates adjusted the loss to account for repair of the one missing tile on the roof ($454.95)[1] and repair to an area of water intrusion below the part of the roof where the tile was missing ($713.02).[2] That total, $1,167.97, falls below the $6,600 deductible for loss caused by wind or hail. Underwriters advised Mr. Luce of this coverage determination in a September 17, 2018 letter issued by Raphael & Associates, accompanied by the EFI Global Assessment.

### III.     Request for Confirmation of the Scope of Any Appraisal

The law in Alabama is clear that "an appraiser's duty is limited to determining the 'amount of loss' – the monetary value of the property damage – and that appraisers are not vested with the authority to decide questions of coverage and liability...." *Rogers v. State Farm Fire & Casualty Co.*, 984 So.2d 382, 392 (Ala. 2007); s*ee also Tobin v. Auto Club Family Ins. Co.*, 2015 WL 12805288 (N.D. Ala. Feb. 12, 2015) ("[U]nder Alabama law…the appraiser's function…is to determine the amount of damage resulting to various items submitted for their consideration…not…to…interpret provisions of the policy.").

Your January 15, 2019 letter demands an appraisal to "resolv[e] differences and [sic] our loss estimates for the dwelling itself." We write to clarify that, consistent with Alabama law, the scope of any appraisal would be limited to the value of the covered loss that resulted from damage to the single roof tile that Mr. Luce contends was displaced by wind. The appraisal would not involve other claimed damages which are not covered by the Policy. As addressed above, we request that you confirm Mr. Luce's agreement to the scope of any appraisal before we proceed to ensure there is no misunderstanding regarding the role of the appraisers and the umpire, if necessary.

---

[1] Labor and materials for roofing repair.
[2] Labor and materials for drywall repair, painting, insulation, and "content manipulation."

This letter and any further activity taken by or on behalf of Underwriters are subject to a full reservation of rights under the Policy, and should in no way be construed as a waiver of any of its rights under the Policy. Underwriters reserve their right to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements, and definitions found in this Policy, including the Duties After Loss Condition, and any additional facts that may come to Underwriters' attention.

We will look forward to your prompt response. Please do not hesitate to contact us should you have any questions.

Very Truly Yours,

*Graham Pulvere*

Graham R. Pulvere

cc: Brett Chessin, Esq.
3215544